M’Girk, C. J.,
delivered the opinion of the Court.
It appears by the record that in the year 1802-,. Asa Lincecum was married in the-State of South Carolina, to one Malinda Nevills; that in 1803 there was born of that marriage a daughter, who died without issue; that in 1805, Harman Lincecum, the appellee, was also born of that marriage j 'that in 1807, 4sa Lincecum and his wife parted by mutual consent, and that the wife is yet alive and not divorced from her husband; that shortly after the separation, Asa came to Missouri and brought with him his son; .that in 1810 he married in this country a second wife, had by that mar *311 riage two children, Isabella and Rezin; that in 1827, Lincecum died.intestate, about which time the said second wife died also that shortly afterwards administration was granted on his effects to H. Lincecum and A. Martin; that after the estate became ready for distribution, the said Harman Lincecum presented his petition to the County Court of Cape Girardeau county, alledging the existence of the former marriage, as stated above, and praying- the Court to order the remaining assets to-be paid to him as sole distributee, deducting his mother’s share therefrom. The mother and Harman Lincecum were the parties on one side, the administrators and guardian of the children by the last marriage were the parties on the other side. The County Court decreed and ordered that the distribution should be made to Harman Lincecum and his mother, in exclusion of the children of the last marriage. The parties appealed to the Circuit Court; when the cause came there, the Court set aside the decree and tried the matter over again, as to Harman Lincecum, taking no notice of the claim set up by the mother.. The Court found for H. Lincecum and ordered distribution to be made to him, to the exclusion of the children by the second marriage. From this decree of the Circuit Court the parties have appealed to this Court. In this Court many points have been made by the appellants. We are of opinion that it will be useless in this case to decide all the points made in- the case. The main point in the case, and the only one necessary to be considered is, whether the children of the second wife are entitled to an equal distribution with the issue of the first marriage. To prove that they are so entitle^, Mr. Ranny, counsel for the appellants, cites and relies on the latter clause of The 8th section of the act of the General Assembly, entitled an act to direct descents and distributions, (Era. Code,. 328,) which clause declares as follows
That ci the issue of all marriages deemed null in law, or dissolved by a divorce,, shall nevertheless be legitimate.” The first section of this act declares that the residue of the estate of an intestate, after deducting the widow’s right of dower, and after the payment of debts, shall be divided among his children. All will agree that-these children must be legitimate children, and that none else can take. The counsel insists that this section completely sustains his case. We are of opinion that this clause of the 8th section of the act does cover this case, and that the children of the second marriage are entitled to share alike with the son of the first marriage. Messrs. Watkins and Scott, for the appellees, contend,
First. That to extend the provisions of the 8th section to this case, would be to give the law a retrospective operation, inasmuch as all these marriages took place before the passage of the act, which was in the year 1825.
Our view of this point is, that though the second marriage took place before the passage of the act, yet at the time of its passage Harman Lincecum had no right on which the law could then act, either prospectively or retrospectively.
The act does not pretend to make lawful those marriages which were null before,, bat it does act prospectively with regard to the children then, in being. It declares that they shall no longer be considered bastards. That they, shall henceforth be capable of inheriting and taking a distributive share from their father or mother, when such parents shall die intestate, leaving property. In this case the act in 1825 fixed' and declared what the capacity of the children should be, if the father should die-intestate. In 1827 the event happened; this-appears-to us to be altogether prospective.
*312 The next matter urged by the appellees’ counsel is, that the g'eneral words of this statute ought to be so limited and restrained as not to extend to this case, because to do so, holds out a reward to bigamy.
It is true that no statute where the words are in any wise doubtful, ought to be so construed as to be against morality and justice; but we conceive that principle does not apply in this. If this statute had sought to relieve the guilty father from the consequences of his departure from the line of duty, then there would be room for the operation of the principle; .but that statute only seeks to relieve the innocent from the consequence of an unworthy act of their father, and this it does do, without violation to the vested rights of any one.
The law of the land allowed the father to dispose of his property, while living, as he pleased. It allowed him to make a will, and to say who shall enjoy the estate after his death. This tiie father has not done, he has left it to the law to say who shall be the owner after his death. The law, in making the selection, has seen St to point out the legitimate children of the intestate. It has also declared who are legitimate children. In all this we see nothing against morality and justice.
With a view to defeat the rights of tho children of the second marriage to a share in the distribution, the counsel for the appellee cites and relies on the last clause of the 1st section of the act respecting divorce and alimony, 21. C. 330, which says that when a marriage shall be celebmted, &.C., and it shall bo adjudged that either party was impotent at the time of the marriage, or that ho or she hath knowingly entered into a second marriage in violation of the previous vow ho or she made to tho former husband or wife, and whose marriage is still subsisting, or that either party hath committed adultery, or has deserted, &c., it shall be lawful for the Court to divorce the innocent and injured party ftxun the bonds of matrimony; but no such divorce shall in any wise affect the legitimacy of the children,except in cases where the marriage shall be declared null and void from the beginning. On the ground of a prior marriage, it is insisted, that these two acts aie to be taken as one act, so far as relates to the question of legitimacy. If this is done, then the law will read that the children of all marriages, which are from the beginning deemed null, shall be legitimate, except where there was a prior marriage still subsisting. But in that case the issue of such second marriage shall he bastards, or not, as the general law will hold them to be. In the first place we are not prepared to admit that these two acts are so far in pari materia, that they ought to he taken as one act; the one is an act solely for the purpose of pointing out who shall take the estate of an intestate. The other is essentially an act to regulate the granting of divorces. It is true that the subject of legitimacy is mentioned in both. In the first act it is mentioned for the purpose alone pf pointing out the children who shall take a distributive share of the intestate.
In the latter act the subject is only mentioned to prevent the fact of a divorce changing in any wise the capacity of the issue or children when it is granted. The two savings in this latter statute were, no doubt, introduced with a view to prevent, on tho one hand, legitimate issue from being bastardized; and on the other, to prevent those who would be bastards, without a divorce taking place between their parents, becoming legitimate by the divorce. It is true the divorce would not, if the exception had not been in the statute, have had that effect. But we think the Legislature put in the exceptions without intending to declare what the law would be without the exceptions.
*313 Another thing to he considered is, that the divorce law, if it does intend to prevent the issue in case of prior marriage from being made legitimate by the exception, yet the exception can only operate in the case provided by the very aet making the exception, and that case is where a'divorce is granted in pursuance of that act, for the cause that there was a previous marriage. The case before us is not a case of legitimacy arising out of a divorce case.
Another thing in this case is, that where a person is once clearly and positively legitimated, he ought not to be bastardized by implication or construction. That rule applies with force in this case. The act of descents and distribution clearly makes these children legitimate, and being once clearly so, if they are holden to be otherwise, it can only be by implication, argument and construction.
For the foregoing reasons the judgment of the Circuit Court is reversed; the cause is remanded to that Court for a new trial in conformity with this opinion.